# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| **JOHN PAUL NESKOROSCHENY** | **PLAINTIFF** |
| **VERSUS** | **CIVIL ACTION NO.: 1:08cv143-HSO-JMR** |
| **SHERIFF DAVID ALLISON** and **PEARL RIVER COUNTY** | **DEFENDANTS** |

## REPORT & RECOMMENDATIONS:

This matter is before the Court pursuant to a Motion [56-1] to Dismiss or in the Alternative for Summary Judgment and Qualified Immunity filed on behalf of the Defendants Sheriff David Allison and Pearl River County on July 6, 2009. Defendants' Motion is accompanied by a Memorandum [57-1] in Support thereof. Plaintiff filed a Response [59-1] in Opposition on July 22, 2009, to which the Defendants filed a Reply [61-1]. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that the Defendants' Motion [56-1] for Summary Judgment be granted.

## STATEMENT OF THE CASE:

Plaintiff filed this *pro se* § 1983 action against the Defendants alleging that he suffered violations of his constitutional rights while being detained as a pretrial detainee at the Pearl River County Jail ("PRCJ").[1]

## FACTS:

Plaintiff was arrested on May 3, 2007, and charged with attempt to commit an offense,

---

[1] The Court notes that Plaintiff does not specify whether his claims are against Defendant David Allison in his individual capacity, his official capacity, or both. Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Allison in both his individual and official capacity. *See Williams v. Love,* 2006 WL 1581908, *5 (S.D.Tex. 2006).

possession of a weapon by a felon, robbery, and two counts of burglary of a commercial building. That same day, he was booked and detained at the PRCJ to await trial on the pending charges. On April 11, 2008, Plaintiff filed his original Complaint [1-1] against the Defendants, Sheriff David Allison and the PRCJ. On July 16, 2008, Plaintiff filed a Response [9-1] to an Order and voluntarily dismissed the PRCJ from the proceedings and added Pearl River County as a defendant.

In his pleadings, Plaintiff alleges that numerous problems plague the PRCJ, and contends that their cumulative effect violates his right to Due Process under the Fourteenth Amendment. The Court notes that the majority of Plaintiff's pleadings are dedicated to challenging the conditions of his confinement at the PRCJ. For instance, Plaintiff alleges that he was denied hot meals and recreation in the form of "yard calls." Further, Plaintiff alleges that the grievance forms he submits go unanswered.

Plaintiff also alleges that the PRCJ is operated in a manner such that it denies him due process. Plaintiff alleges that the facility is overcrowded, and this causes or contributes to numerous problems. For instance, Plaintiff alleges that he had to sleep on a steel bunk without a mat for his first twenty-seven days of incarceration at the PRCJ. Also, Plaintiff alleges that he was not issued a pair of shoes upon entering the PRCJ. Plaintiff claims that he was exposed to tuberculosis, scabies, and staph infection outbreaks at the PRCJ and that he contracted scabies.

On September 18, 2008, Plaintiff filed a Motion [24-1] to Amend Complaint and made an allegation of excessive force by a PRCJ officer. Plaintiff contends that on or about August 13, 2008, he was thrown against a wall by officer Dale Seal. Plaintiff claims this caused pain in his shoulder and that he was taken to the Highland Community Hospital Emergency Room to receive medical attention. This Court granted Plaintiff's request to add the additional claim to Plaintiff's original Complaint on October 27, 2008. (*See* Order [25-1].) Plaintiff, however, did not seek leave to add

officer Dale Seal as a defendant.

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law,

deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate

to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (stating that these two requirements "must not be diluted").

## ANALYSIS:

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment

Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[2] or an "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if

---

[2] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

it is arbitrary or purposeless." *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is also appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaint alleges both unconstitutional conditions of confinement and episodic acts or omissions. Therefore, the Court shall address the two categories of allegations individually.

**I. Conditions of Confinement:**

Plaintiff alleges that Defendants are officially liable because they failed to remedy the allegedly unconstitutional conditions at the PRCJ. The Court notes that Plaintiff's official capacity claim against Defendant Allison is, in reality, a claim against the office which he occupied at the time of the alleged incident and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against Defendant Allison in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983

liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

The majority of Plaintiff's Complaint is dedicated to challenging the constitutionality of his conditions of confinement at the PRCJ. However, other than the previously noted allegations of unconstitutional conditions, Plaintiff presents no evidence that an official policy of the PRCJ was responsible for the alleged violation of his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claim against the Defendants. Accordingly, the Court recommends that summary judgment be granted in favor of the Defendants on Plaintiff's official capacity claims as they relate to the conditions of the PRCJ.

Additionally, Plaintiff's Complaint seeks to impose liability against Defendant Allison in his individual capacity for the allegedly unconstitutional conditions at the PRCJ. However, because Defendant Allison is a law enforcement official, he may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff seeks to establish § 1983 liability against Defendant Allison, Plaintiff must offer proof that the conditions at the PRCJ were imposed as a form of punishment. *Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial

detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at 539.

Plaintiff alleges that he was denied an opportunity to exercise in the form of "yard calls." Defendants contend that Plaintiff was often subject to disciplinary action that included the loss of yard call privileges. Plaintiff's inmate file shows that his recreation privileges were restricted on different occasions for destruction of county property, attempting to pass a letter during canteen, and taking an aggressive manner towards an officer. (*See* Ex. "C" Attach. [62-2] Defs.' Mot. Summ. J.) Also, Plaintiff admits in his deposition that he did receive some yard calls while he was housed at the PRCJ. (*See* Ex. "E" Attach. [62-3] Defs.' Mot. Summ. J.) The Court notes that Plaintiff has presented no direct evidence to indicate that he was ever denied a recreation period as a form of punishment for his pending criminal charges. Further, Plaintiff has presented no evidence to establish that the alleged infrequency of his yard calls were not reasonably related to a legitimate penalogical interest such as assuring inmate security. This issue does not rise to an actionable claim.

Plaintiff's allegation concerning the quality of the food served at the PRCJ also fails to state a constitutional claim. Plaintiff's only complaint is that the food is regularly served at an improper temperature. However, Plaintiff has offered no evidence or even made an allegation that the food at the PRCJ is served in the alleged manner as a form of punishment. Furthermore, Plaintiff readily admits that he was served three meals a day and that the food was adequate and did not cause him any physical problems. (*See* Ex. "E" Attach. [62-3] Defs.' Mot. Summ. J.) Although the food was not served to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (*citing Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

Plaintiff further alleges that the PRCJ is overcrowded. At the outset, the Court notes that,

absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment. *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, 2008 WL 53269, *2 (S.D. Miss. 2008); *Robertson v. Coahoma County, Miss.*, 2008 WL 3334091, *5 (N.D.Miss. 2008). Plaintiff makes no direct allegations that Defendant Allison intentionally operated the PRCJ in the alleged overcrowded condition. Furthermore, other than Plaintiff's allegation of overcrowding, he presents no evidence in support or even elaborates on such. The Court finds that Plaintiff has failed to establish that any alleged overcrowding at the PRCJ is not reasonably related to a legitimate governmental interest such as balancing an overwhelming number of detainees with a finite amount of available housing.

Plaintiff additionally contends that due to the overcrowding he was not given a mat for the first twenty-seven days of his incarceration and therefore had to sleep on a steel rack. Also, Plaintiff claims that he was not given a pair of shoes when he entered the PRCJ. The Court is unclear as to whether Plaintiff arrived at the PRCJ with a pair of shoes; he claims in his deposition that he did not but his inmate file contains a property inventory receipt that shows one shirt, one pants, and one pair of shoes. (*See* Exs. "C," "E" Attach. [62-2, 62-3] Defs. Mot. Summ. J.) Regardless, the Court notes that Plaintiff has made no allegations or offered any evidence that Defendant Allison had mattresses and shoes available, but chose not to issue them as a form of punishment. Furthermore, Plaintiff admits that he was issued a blanket upon entering the PRCJ and that he eventually obtained a pair of shoes and a mattress. (*See* "E" Attach. [62-3] Defs.' Mot. Summ. J.) Plaintiff admits that he was not injured as a result, but claims that he did suffer from lower back soreness. *Id.* Any injury or discomfort that Plaintiff did suffer is *de minimis*. The Court finds that Plaintiff's specific allegations do not rise to the level of constitutional violations.

Plaintiff asserts that he was exposed to outbreaks of tuberculosis, scabies, and staph infections

while he was incarcerated at the PRCJ. Plaintiff claims this is due to inmates not being "checked through medical" upon entering the jail. However, Plaintiff's inmate file reveals that he was screened by the jail medical staff and given a medical history and physical assessment upon entering the PRCJ. (*See* Ex. "C" Attach. [62-2] Defs. Mot. Summ. J. 38-42.) Furthermore, Plaintiff was tested for tuberculosis on May 17, 2007. *Id.* at 43. However, Plaintiff's inmate file is void of any grievance or medical request concerning scabies, tuberculosis, or a staph infection. Plaintiff has not presented any evidence to this Court that he ever contracted tuberculosis, scabies, or a staph infection, other than his own allegation that he contracted scabies. Additionally, Plaintiff does not allege that he was denied treatment for scabies, tuberculosis, or a staph infection. Furthermore, Plaintiff admits in his deposition that he was never diagnosed with scabies, tuberculosis, or a staph infection. (*See* Ex. "E" Attach. [62-3] Defs. Mot. Summ. J. 17-20.) Plaintiff has not presented any evidence in support of his broad allegations or even alleged that his exposure to these alleged outbreaks was in the form of punishment. The Court finds that Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

Also, Plaintiff alleges that his grievances concerning the conditions at the PRCJ go unanswered. However, Plaintiff has not presented any evidence to this Court showing where he ever submitted a grievance concerning any of the above noted conditions at the PRCJ. Furthermore, Plaintiff's inmate file reveals a few grievances filed by the Plaintiff concerning his canteen privileges and account, all of which were responded to PRCJ employees. (*See* Ex. "C" Attach. [62-2] Defs. Mot. Summ. J.) Finally, the Court notes that Plaintiff has no constitutional right to have grievances resolved in a satisfactory manner. *See Geiger v. Jowers*, 404 F.3d 371, 74 (5th Cir. 2005). This issue does not rise to an actionable claim.

After a careful analysis of Plaintiff's allegations concerning the conditions of his confinement

at the PRCJ, the Court finds that Defendant Allison is entitled to qualified immunity as to Plaintiff's individual capacity claims. Plaintiff has failed to provide any direct evidence that Defendant Allison imposed any of the alleged conditions as a punitive measure. Furthermore, Plaintiff has failed to submit evidence tending to prove that the alleged conditions were not reasonably related to a legitimate governmental interest. Therefore, Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

## II.  Episodic Acts and Omissions:

On September 18, 2008 Plaintiff filed a Motion [24-1] to Amend Complaint which this Court granted. (*See* Order [25-1].)  In his motion, Plaintiff makes an allegation regarding an instance of violence involving an employee of the PRCJ.  Specifically, Plaintiff alleges that on August 13, 2008 he was called to the front and asked to sign a document, and at some point Officer Dale Seal grabbed him out of his chair and threw him into the hallway.  Once in the hallway, Plaintiff alleges that Officer Seal threw him into the wall causing injury to his shoulder.  Plaintiff asserts that he felt pain in his shoulder and that he was taken to the Highland Community Hospital Emergency Room the next day. Plaintiff asserts that Defendant Allison is liable in both his individual and official capacity for this alleged incident.  Plaintiff never sought leave of court to add Dale Seal as a Defendant in this cause.

Defendants contend that in the hallway Plaintiff took an aggressive manner towards officer Seal and that Seal, being threatened by an unruly inmate, responded to restore order and regain control of the situation. (*See* Ex. "C" Attach. [62-2] Defs. Mot. Summ. J.)  An incident report was filed by officer Seal noting that Plaintiff was brought to the booking area to see the warden and while exiting through the booking doors Plaintiff turned in an aggressive manner towards Seal. *Id.*  Officer Seal placed Plaintiff against the wall and with the assistance of officer Lawrence Baradell Plaintiff was handcuffed and subsequently placed in lockdown. *Id.*  Also, Defendants note that Highland Community Hospital

diagnosed Plaintiff with a contusion of the shoulder and discharged him in good condition. (*See* Ex. "B" Attach. [62-1] Defs. Mot. Summ. J.)  Defendants claim that Plaintiff was provided adequate medical care for a *de minimus* injury following the incident, and note that Plaintiff did not file any grievance following the incident.

Plaintiff's official capacity claim against Defendant Allison is, in reality, a claim against the office which he occupied at the time of the alleged incident and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against Defendant Allison in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury.  *See Lawson*, 286 F.3d at 263.

Other than the above allegation of an incident of allegedly unconstitutional conduct, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights.  The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.  Plaintiff has presented no evidence that Defendant Allison was involved in the alleged assault against him or was even aware that it had occurred.  Indeed, Plaintiff admitted in his deposition that Defendant Allison was not present and did not participate in the alleged incident. (*See* Ex. "E" Attach. [62-3] Defs. Mot. Summ. J. 37.)  At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against Defendant Allison.

To the extent that Plaintiff seeks to hold Defendant Allison liable in his individual capacity,

Defendant Allison asserts that he is entitled to the defense of qualified immunity. Also, Defendant Allison notes that he was not present during, or is aware of, any disciplinary action against Plaintiff. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952, 173 L. Ed. 2d 868, 887 (2009), where the doctrine of *respondeat superior* is inapplicable, a defendant cannot be held liable unless he himself acted on account of a constitutionally protected characteristic. Since "vicarious liability is inapplicable to... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 1948, 173 L. Ed. 2d 868 (2009). "A Complaint must state a claim that is plausible on its face." *Id*. at 1949-50, 1953, 173 L. Ed. 2d 868 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). As was the case in *Iqbal*, here the Plaintiff's Complaint does not contain any factual allegations sufficient to plausibly suggest Defendant Allison himself violated a constitutional right of the Plaintiff. Therefore, Plaintiff's pleadings do not meet the standard necessary to comply with Federal Rule of Civil Procedure 8 and subject Defendant Allison to liability in his individual capacity.

However, out of an abundance of caution, the Court will analyze Defendant Allison's claim of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert*, 500 U.S. at 231. Plaintiff's medical request concerning pain in his shoulder was filed the day after the alleged incident and the Plaintiff was taken to the hospital that day. He was discharged the same day in good condition with a shoulder contusion. Plaintiff's discharge instructions included resting his shoulder and applying ice. The Court notes that § 1983 imposes liability only for violations of constitutional rights, and not merely for violations of duties of care arising under tort law. Thus, not every injury caused by a state official is actionable under § 1983. *Hinojosa v. City of Terrell, Tex.*,

834 F.2d 1223, 1229 (5th Cir. 1988); *Mark v. Caldwell*, 754 F.2d 1260, 1261 (5th Cir. 1985) (recognizing that § 1983 does not provide a cause of action for every injury wrongfully inflicted by a state officer). Accordingly, § 1983 remedies are limited to official conduct that (1) caused some meaningful injury, (2) was grossly disproportionate to the need presented, and (3) was motivated by malice. *Hinojosa*, 834 F.2d 1229. Furthermore, the Fifth Circuit has acknowledged that some types of assault, namely a push or slap, are appropriately classified as *de minimis* injury, and therefore do not support liability under § 1983. *See Beck v. Alford*, 32 F.3d 565 (5th Cir. 1994). Based on Plaintiff's description of the alleged assault, his medical records, and his inmate file, the Court finds that he has failed to establish that Defendant Allison violated his constitutional rights.

Assuming, *arguendo*, that Plaintiff has raised a genuine issue as to whether his constitutional rights were violated, the Court finds that Plaintiff has presented no evidence of any unreasonable conduct on behalf of Defendant Allison. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). In order to overcome the bar of qualified immunity, Plaintiff must allege that Defendant Allison's conduct was objectively unreasonable in response to the alleged assault recounted by Plaintiff.

The Court notes that Plaintiff has presented no evidence that Defendant Allison was involved in this alleged assault or was even aware that it had occurred. It appears that Plaintiff seeks to establish Defendant Allison's liability based on the conduct of his employees. However, the doctrine of *respondeat superior* is inapplicable in Section 1983 cases. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Therefore, because Plaintiff is unable to present any evidence of Defendant Allison's personal involvement in the alleged assault, any evidence of Defendant Allison's knowledge of the conduct of his employees, or any other unreasonable conduct on behalf of Defendant Allison, the

Court finds that Defendant Allison is entitled to qualified immunity against Plaintiff's individual capacity claims.

The Court also finds that to the extent Plaintiffs' Complaint or Amended Complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

## RECOMMENDATION:

After considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether the Defendants violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the PRCJ. Plaintiff has presented no evidence indicating that the alleged conditions of confinement were imposed by the Defendants for a punitive purpose. Further, Plaintiff's allegation that he was pushed into a wall by an employee at the PRCJ fails to rise to the level of a constitutional violation because the incident did not result in a meaningful injury. Finally, even if Plaintiff's allegation regarding the assault by a PRCJ officer stated a viable constitutional claim, Plaintiff has failed to present evidence that the officer was acting pursuant to an official policy. Accordingly, the Court recommends that the Defendants are entitled to summary judgment, and Plaintiff's official and individual capacity claims against Defendant Allison should be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

**SO ORDERED** this the ___16th___ day of November, 2009.

_____s/ John M. Roper, Sr._____
CHIEF UNITED STATES MAGISTRATE JUDGE